# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

PAMELA J. VADEN,                )
                                )
            Plaintiff,           )
                                )
v.                              ) Case No. CIV-12-401-KEW
                                )
CAROLYN W. COLVIN, Acting       )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.           )

## OPINION AND ORDER

Plaintiff Pamela J. Vaden (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 29, 1958 and was 52 years old at the time of the ALJ's latest decision. Claimant completed her high school education. Claimant has worked in the past as a nurse's aide, medication aide, and secretary. Claimant alleges an inability to work beginning September 5, 2006 due to limitations resulting from migraine headaches, arthritis, back and knee pain, thyroid

3

problems, depression, and anxiety.

**Procedural History**

On March 16, 2009, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. On May 6, 2010, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On October 27, 2010, an administrative hearing was held before Administrative Law Judge ("ALJ") Trace Baldwin in McAlester, Oklahoma. By decision dated January 24, 2011, the ALJ denied Claimant's requests for benefits. The Appeals Council denied review of the ALJ's decision on July 26, 2012. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) failing to

properly evaluate, consider, and weigh the medical evidence; (2) failing to provide the vocational expert with an accurate hypothetical question at step five; and (3) performing an improper credibility analysis.

## Consideration of the Medical Evidence

In his decision, the ALJ found Claimant suffered from the severe impairments of arthritis, major depressive disorder, and generalized anxiety disorder. (Tr. 23). The ALJ determined Claimant retained the RFC to perform light work by occasionally lifting/carrying 20 pounds, frequently lifting/carrying 10 pounds, standing and/or walking for 6 hours in an 8 hour workday, and sitting for 6 hours in an 8 hour workday. She had an unlimited ability to push and pull including the operation of hand and foot controls. She was able to occasionally climb ramps and stairs, but must avoid climbing ladders, ropes, and scaffolds. She was able to frequently balance, stoop, and crouch and occasionally kneel and crawl. She had no manipulative, visual, communicative, or environmental limitations. She could understand, remember, and carry out simple work instructions. She could also relate to co-workers and supervisors on a superficial work basis. However, she should avoid working with the general public. She was able to adapt to a work environment. (Tr. 26).

After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of cleaner/maid and poultry dresser, which the vocational expert testified existed in sufficient numbers nationally and regionally. (Tr. 32). The ALJ, therefore, concluded Claimant was not disabled. (Tr. 33).

Claimant contends the ALJ gave the findings of consultative examiner Dr. Theresa Horton "great weight" while giving "little weight" to the consultative examiner Dr. Joseph M. Schwartz. Dr. Horton completed a Mental Status Examination on July 7, 2009. She found Claimant to have a friendly attitude, though cautious with appropriate level of cooperation. She was mildly anxious. She demonstrated that she often had problems with understanding simple questions and further clarification had to be made in order for her to understand and respond appropriately. She walked into the appointment without assistance, with no unusual gait, and appeared to sit comfortably. (Tr. 284).

Claimant's thought processes were logical, organized and goal directed, but slow. She presented with a history of suicidal ideation, but no attempts. She also presented with occasional irrational worries. She presented to Dr. Horton with a limited history of auditory/visual hallucinations. She heard a baby crying and her name called at night a few years ago, but it went away, although she states it is beginning again. She presented with

significant history of feeling as though others are watching and judging her, and occasionally conspiring against her. Her mood was predominantly depressed and anxious and she rated her mood as 4 out of 10. Her affect was congruent and restricted. Her concentration was adequate with low average to borderline intelligence. (Tr. 285).

Dr. Horton diagnosed Claimant with Major Depressive Disorder, Recurrent, Moderate and Generalized Anxiety Disorder. She concluded Claimant appeared capable of understanding, remembering and managing simple instructions and tasks, but not complex. Her pace was somewhat slowed and likely would affect her level of productivity. She appeared capable of social and emotional adjustment into some small occupational and social settings. She likely would do poorly in a high paced environment. She likely would do poorly in larger or populated work settings. (Tr. 286).

On October 12 and 20, 2010, Claimant was also evaluated by Dr. Joseph M. Schwartz. In the course of examining Claimant, he reviewed her medical/psychiatric records, her psychosocial history, conducted a clinical interview, performed a mental status examination, administered testing including the MCMI-III and MMPI-II tests, similarities and comprehension off the WAIS-R test, Shipley-2 Abstract, Vocabulary, and Block Patterns, and evaluated the data in accordance with his educational qualifications and 27 years of

7

clinical experience. (Tr. 390).

Dr. Schwartz also completed a Mental Status form on Claimant. He noted Claimant's significant flat affect and demeanor; limited eye contact; little to no spontaneous response; walked with a tired, slow, retarded gait of major depression; sometimes misses daily living tasks such as washing, brushing teeth; examination revealed she is most likely a functional illiterate; received "social promotion" in school; and she did not interact without prompting. Dr. Schwartz found Claimant was anhedonia in appearance, demeanor, and overall display of herself. He found she had poor sleep with associated weight loss. He doubted her denial of hallucinations. She was very suspicious of others, especially men. She did not appear to be malingering. (Tr. 393). Dr. Schwartz found Claimant could not remember, focus and retain sufficiently to carry out the simplest of tasks. (Tr. 394). He diagnosed Claimant with Schizoaffective Disorder, Major Depressive, recurrent. Id.

Dr. Schwartz also completed a Mental RFC Assessment form on Claimant. He found she was severely limited in the areas of the ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to sustain an ordinary routine without special supervision; ability to work in coordination with or proximity to others without being distracted

by them; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to accept instructions and respond appropriately to criticism from supervisors; ability to respond appropriately to changes in the work setting; and ability to travel in unfamiliar places or use public transportation. (Tr. 395-96).

Dr. Schwartz also found Claimant was markedly limited in the areas of the ability to remember locations and work-like procedures; ability to carry out very short and simple instructions; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to make simple work-related decisions; ability to get along with co-workers or peers without distracting them or exhibiting behavior extremes; and ability to be aware of normal hazards and take appropriate precautions. Id.

In his decision, the ALJ found Dr. Schwartz's opinion was given "little weight." He did so based upon his finding that (1) Claimant saw Dr. Schwartz only 15 days prior to the administrative hearing; (2) Dr. Schwartz "was presumably paid for his report"; and (3) Dr. Schwartz's clinical "emphasis" was on addiction, substance abuse, geriatrics, forensic evaluations, closed head injuries, and gambling addictions. The ALJ also found his opinion was "overly restrictive

9

and in blatant contrast with the mental status examinations that precede it." (Tr. 30-31).

Dr. Horton's opinion was given "great weight." The ALJ found it was consistent with the record as a whole. (Tr. 30). He incorporated "appropriate limitations" into the RFC to accommodate Dr. Horton's proposed limitations. Id.

The ALJ failed to properly account for the differentiation in the treatment of these two reports. Dr. Schwartz administered objective testing to support his findings while Dr. Horton, who also only saw Claimant on one occasion, did no such testing. Additionally, it may be presumed that all consultative examiners are paid by someone and this provides a thin basis for rejecting Dr. Schwartz's findings. In essence, the ALJ relies upon factors outside of the reliability of the report itself to reject Dr. Schwartz's opinion when those outside factors do not form a justifiable reason for rejecting the opinion. Additionally, to the extent the ALJ finds the opinion "in blatant contrast with the mental status examinations that precede it," the ALJ did not specifically identify which examinations he contrasted with Dr. Schwartz's opinion. Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996) ("[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion"); Kepler v. Chater, 68

F.3d 387, 391 (10th Cir.1 995) (ALJ's listing of factors he considered was inadequate when court was "left to speculate what specific evidence led the ALJ to [his conclusion]").

Moreover, the ALJ failed to state the weight assigned to various other reports in the record. Dr. Kathleen A. Ward, a consultative examiner, found Claimant suffered from a personality disorder, NOS. (Tr. 234). The ALJ did not address Dr. Ward's report or the findings she made in his decision. Her findings support the same finding made by Dr. Schwartz. The ALJ is required to consider every medical opinion and must provide specific, legitimate reasons for rejecting it. Doyle v. Barnhart, 331 F.3d 758, 764 (10th Cir. 2003). In weighing the opinion, the ALJ is obligated to consider the factors in 20 C.F.R. §§ 404.1527(d) and 416.927(d).

As with other evidentiary matters, when an ALJ is considering medical opinion evidence, it is the ALJ's role to weigh and resolve evidentiary conflicts and inconsistencies. See, e.g., Rutledge v. Apfel, 230 F.3d 1172, 1174 (10th Cir. 2000); Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988). On remand, the ALJ shall re-evaluate the opinions of Dr. Schwartz and Dr. Ward, setting forth the inconsistencies in the record, if any, and the weight afforded each opinion.

**Step Five Findings**

Since the opinion evidence is to be re-examined, the ALJ shall also consider whether the totality of Claimant's impairments and limitations were included in the questioning of the vocational expert on remand. If additional questioning is required, the ALJ shall obtain the appropriate vocational testimony to evaluate Claimant's employment prospects.

**Credibility Determination**

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other

symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

Claimant's testimony on restrictions upon his activities of daily living would be substantially supported by Dr. Schwartz's findings. On remand, the ALJ shall consider whether a reassessment of Claimant's credibility is in order once a re-evaluation of Dr. Schwartz's opinion has occurred.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth

sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Opinion and Order.

    IT IS SO ORDERED this 24th day of March, 2014.

                              _____
                              KIMBERLY E. WEST
                              UNITED STATES MAGISTRATE JUDGE